B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS SVETLANA BUZINA | DEFENDANTS CARDENAS THREE LLC, FRANKLIN ADVANTAGE, INC., CHARLES STREET INVESTMENTS, INC., CHARLES STREET INVESTMENT, LLC, INAAM RASHEED NAEEM |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) Nancy Korompis, Esq. (SBN: 268174) P.O. Box 60011 Pasadena, CA 91116    (626) 938-9200 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only) XXDebtor       □ U.S. Trustee/Bankruptcy Admin □ Creditor       □ Other □ Trustee | **PARTY** (Check One Box Only) □ Debtor       □ U.S. Trustee/Bankruptcy Admin □ Creditor       □ Other □ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Cardenas Three is proceeding with Non-Judicial Foreclosure in derogation of rights of Junior lienholder who is the Debtor and Plaintiff in this action. Lender was Negligent in underwriting a loan which should not have issued.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
□ 11-Recovery of money/property - §542 turnover of property
□ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
□ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
XX 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
□ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
□ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>SVETLANA BUZINA | BANKRUPTCY CASE NO.<br>21-bk-10263-MT | |
| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL | DIVISION OFFICE<br>San Fernando | NAME OF JUDGE<br>Hon. Maureen A. Tighe |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>2/23/2021 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Nancy Korompis | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Nancy Korompis (268174)<br>600 s Lake Avenue, Ste 507<br>Pasadena, CA 91106<br>PO Box 60011<br>Pasadena, CA 91116<br>Tel: 626-938-9200<br>Fax: 877-552-9252<br>nancy@korompislaw.com<br><br><br>*Attorney for Plaintiff* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br>SVETLANA BUZINA<br><br><br><br><br><br>Debtor(s). | CASE NO.: 1:21-bk-10263-MT<br><br>CHAPTER: 13<br><br>ADVERSARY NO.: |
| SVETLANA BUZINA<br><br><br><br><br>Plaintiff(s)<br>Versus<br>CARDENAS THREE, LLC, a California Limited Liability Company, FRANKLIN ADVANTAGE, INC., CHARLES STREET INVESTMENTS, INC. a Wyoming Corporation; CHARLES STREET INVESTMENT, LLC, an unknown business entity, INAAM RASHEED NAEEM<br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is _____. If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

> **Hearing Date:** _____   **Address:**
> **Time:** _____   ☐ 255 East Temple Street, Los Angeles, CA 90012
> **Courtroom:** _____   ☐ 3420 Twelfth Street, Riverside, CA 92501
>     ☐ 411 West Fourth Street, Santa Ana, CA 92701
>     ☐ 1415 State Street, Santa Barbara, CA 93101
>     ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL
CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
Deputy Clerk

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                    Page 2                    **F 7004-1.SUMMONS.ADV.PROC**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy (1) of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| *Date* | *Printed Name* | *Signature* |
|---|---|---|

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

Nancy Korompis (268174)
600 s Lake Avenue, Ste 507
Pasadena, CA 91106
PO Box 60011
Pasadena, CA 91116
Tel: 626-938-9200
Fax: 877-552-9252
nancy@korompislaw.com

Attorney for Debtor
**Svetlana Buzina**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO DIVISION

| | |
|---|---|
| In re | ) Adv. Case No. |
| | ) |
| | ) *Before the* **Hon. Maureen A. Tighe** |
| **SVETLANA BUZINA** | ) |
| | ) Chapter 13 Case No. 1:21-bk-10263-MT |
| | ) |
| | ) **COMPLAINT TO QUIET TITLE** |
| Debtor(s). | )    1.  **TO DETERMINE THE EXTENT AND** |
| | )        **VALIDITY OF LIENS ON REAL** |
| | )        **PROPERTY:** |
| **SVETLANA BUZINA** | )    2.  **QUIET TITLE - FRAUD** |
| | )    3.  **FRUAD** |
| Plaintiff, | )    4.  **VIOLATION OF HOME EQUITY** |
| | )        **SALES CONTRACT ACT California** |
| v. | )        **Civil Code, §1695** |
| | )    5.  **BREACH OF CONTRACT** |
| **CARDENAS THREE, LLC, a California** | )    6.  **NEGLIGENCE** |
| **Limited Liability Company** | )    7.  **DECLARATORY RELIEF** |
| **FRANKLIN ADVANTAGE, INC.** | ) |
| **CHARLES STREET INVESTMENTS, INC.** | ) *[re Property Located at:* |
| **a Wyoming Corporation;** | ) *19237 Charles Street* |
| **CHARLES STREET INVESTMENT, LLC,** | ) *Tarzana, California 91356]* |
| **an unknown business entity;** | ) |
| **INAAM RASHEED NAEEM** | ) |
| | ) |
| Defendants. | ) |
| | ) |

      Debtor and Plaintiff **SVETLANA BUZINA** ("Plaintiff") hereby submits her Complaint and alleges as follows:

/ / /

~1~

**ADVERSARY COMPLAINT**

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to the provisions of 28 U.S.C. §1334 and the reference order of the United States District Court for the Central District of California.  This adversary proceeding relates to BUZIN's Chapter 11 case with the Case No. 1:21-bk-10263-MT, now pending in the United States Bankruptcy Court for the Central District of California. The matter is a core proceeding pursuant to 28 U.S.C. §157 (b)(2)(k) to the extent any related claims are determined not to be a core proceeding, Plaintiff consents to an entry of a final judgment and order by this Bankruptcy Court.

2.      Venue herein is proper pursuant to the provisions of 28 U.S.C. §1409 as this adversary proceeding arises under Title 11 or arises under or relates to a case under Title 11 which is pending in this Court and does not involve a consumer debt less than $10,000.

## PARTIES & GENERAL ALLEGATIONS

3.      At all times herein mentioned, Plaintiff is a resident of the County of Los Angeles, State of California. Plaintiff was born in Russia and immigrated to the United States in or about 2010. Plaintiff is fluent in the Russian language.  She speaks and reads English with great difficulty.

4.      At all times herein mentioned, since 2012, Plaintiff owns and is residing at that certain real property which street address and is commonly referred to as 19237 Charles Street, located in the City of Tarzana, County of Los Angeles, State of California (the "Subject Property") and is legally described as Lot 75 Of Tract No. 2605 in The City of Los Angeles, County Of Los Angeles, State Of California as per Grant Deed dated October 12, 2012, recorded November 14, 2012 as Instrument No. 20121725142 in the Official Records of Los Angeles County attached hereto and incorporated herein by reference.

5.      The Subject Property was encumbered by two loans, one in the amount of approximately $750,000.00 and a second in the amount of $350,000.00.  Plaintiff is informed and believed that the estimated market value of the Property in 2017 was approximately $1.6 to $1.8 million.

6.      Plaintiff further alleges that at all times herein mentioned Defendant CARDENAS THREE, LLC, is a California Limited Liability Company, with its principal place of business in the County of San Bernardino, State of California.

7.      Defendant, FRANKLIN ADVANTAGE, INC., is a California Corporation duly authorized to do

~ 2 ~

**ADVERSARY COMPLAINT**

business in the State of California (hereinafter "Franklin"). CARDENAS THREE hired Franklin to provide loan origination and underwriting services for the loan which it gave to CHARLES STREET INVESTMENTS, INC. At all relevant times, CARDENAS THREE, was the Principal and is responsible for its agent's negligence.

8.    Plaintiff is informed and believe and upon such information and belief allege that at all times herein mentioned Defendant CHARLES STREET INVESTMENTS INC. was a Wyoming Corporation, with its principal place of business in the State of California. At all times mentioned herein, CHARLES STREET INVESTMENTS INC. was and is an Equity Purchaser as that term is defined in Civil Code §1695.1.

9.    Plaintiff is informed and believe and upon such information and belief allege, that at all times herein mentioned Defendant CHARLES STREET INVESTMENT, LLC, was and is a business, form unknown, qualified to do business in the State of California. At all times mentioned herein, CHARLES STREET INVESTMENT, LLC, was and is an Equity Purchaser as that term is defined in Civil Code §1695.1.

10.    At all times herein mentioned Defendant INAAM RASHEED NAEEM (hereinafter "Naeem") was a resident of the County of Los Angeles, State of California. He is the son of He is the sole shareholder of Charles Street Investments, INC.

11.    Plaintiff is informed and believe and upon such information and belief allege that at all times herein mentioned Defendants, and each of them, were the principals, agents, servants, employees and co-conspirators of the remaining Defendants, and were at all times acting within the purpose and scope of such agency and employment.

**ALTER EGO ALLEGATIONS**

12.    Plaintiff is informed and believe and thereon allege that some of the corporations, limited liability companies, and entities named as Defendants herein, including but not limited to CHARLES STREET INVESMTNS LLC., and CHARLES STREET INVESTMENTS, INC., a Wyoming corporation, and DOES 1 through 100, (hereinafter occasionally collectively referred to as the "ALTER EGO CORPORATIONS"), and each of them, were at all times relevant the alter ego corporations of individual Defendants SHAHID NAEEM (now deceased) and INAAM RASHEED NAEEM, son of

~ 3 ~

SHAHID NAEEM, and by reason of the following:

a. Plaintiff is informed and believe and thereon allege that said individual defendants, at all times herein mentioned, dominated, influenced and controlled each of the ALTER EGO CORPORATIONS and the officers thereof as well as the business, property, and affairs of each of said corporations.

b. Plaintiff is informed and believe and thereon allege that, at all times herein mentioned, there existed and now exists a unity of interest and ownership between said individual defendants and each of the ALTER EGO CORPORATIONS; the individuality and separateness of said individual defendants and each of the ALTER EGO CORPORATIONS have ceased.

c. Plaintiff is informed and believe and thereon allege that, at all times since the incorporation of each, each ALTER EGO CORPORATION has been and now is a mere shell and naked framework which said individual defendants used as a conduit for the conduct of their personal business, property and affairs.

d. Plaintiff is informed and believe and thereon allege that, at all times herein mentioned, each of the ALTER EGO CORPORATIONS was created and continued pursuant to a fraudulent plan, scheme and device conceived and operated by said individual Defendants SHAHID NAEEM and INAAM RASHEED NAEEM, whereby the income, revenue and profits of each of the ALTER EGO CORPORATIONS were diverted by said individual Defendants to themselves.

e. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the ALTER EGO CORPORATIONS was organized by said individual defendants as a device to avoid individual liability and for the purpose of substituting financially irresponsible corporations in the place and stead of said individual defendants, and each of them, and accordingly, each ALTER EGO CORPORATION was formed with capitalization totally inadequate for the business in which said corporation was engaged.

f. Plaintiff is informed and believes and thereon alleges that each ALTER EGO CORPORATION is insolvent. By virtue of the foregoing, adherence to the fiction of the separate corporate existence of each of the ALTER EGO CORPORATIONS would, under the circumstances, sanction a fraud and promote injustice in that Plaintiff would be unable to realize

~4~

ADVERSARY COMPLAINT

upon any judgment in their favor.

13.    Plaintiff is informed and believes and thereon alleges that, at all times relevant hereto, the individual defendants SHAHID NAEEM and INAAM RASHEED NAEEM and the ALTER EGO CORPORATIONS acted for each other in connection with the conduct hereinafter alleged and that each of them performed the acts complained of herein or breached the duties herein complained of as agents of each other and each is therefore fully liable for the acts of the other.

## FACTUAL ALLEGATIONS

14.    On or about January 11, 2017, a Notice of Default and Election to Sell Under Deed of Trust was recorded in Los Angeles County, California against the Subject Property by Scorpion Investments, LLC under a Deed of Trust dated October 15, 2015 in the amount of $350,000.00. This was a hard money second lien. As a result of said Notice of Default, Plaintiff listed the Subject Property for sale with a licensed real estate agent for $1.5 million.

15.    In January or February 2017, Plaintiff were contacted by SHAHID NAEEM. He had learned that Plaintiff was in default on a loan against the subject residential property and discussed with them the possibility of losing their home. He informed them that he was a broker/real estate agent, and could immediately arrange for a buyer to buy the Subject Property at a higher price than the price that was being offered through their existing agent. He also informed them that he was a prior owner of the Subject Property, and knew that the property was larger in size than reflected in county records which would allow it to be marketed for a substantially higher price than the currently listing price.

16.    SHANID NAEEM proposed to Plaintiff that he would sell the property to an LLC in which the Plaintiff was to be a member owning 40% of the LLC who would then invest money to rehabilitate the property reselling it for an even greater profit. Based upon the foregoing representations and the proposed agreement, Plaintiffs terminated their listing agreement with their then listing agent.

17.    On or about March 23, 2017 Plaintiff signed a Seller's Listing Agreement with SHAHID NAEEM. Pursuant to said Agreement, SHAHID NAEEM had the exclusive right to market, solicit and negotiate for the disposition of the Subject Property through sale exchange or option for the listing period beginning March 26, 2017 and terminating on September 25 2017. Plaintiff agreed to list the property for $1,800,000 and Plaintiff agreed to pay SHAHID NAEEM a commission of 6% of the purchase price.

~ 5 ~

ADVERSARY COMPLAINT

A copy of said Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

18.    On or about March 23, 2017, SHAHID NAEEM presented an offer in which a buyer would purchase the Subject Property for $1,800,000.00 giving Plaintiff the option to continue to live in the property, and to invest their equity from the proceeds from the current sale of the property, for improvements and updates.

19.    On or about April 17, 2017, a Notice of Trustee's Sale was recorded on the Subject Property in the County of Los Angeles. Pursuant to the Notice of Trustee's Sale, the Subject Property was to be sold at a public auction on May 8, 2017.

20.    On or about April 9, 2017, Plaintiff accepted a written offer and signed a home Purchase Agreement as prepared by SHAHID NAEEM.  The buyer was identified as CHARLES STREET LLC, AND/OR ASSIGNS, who was the equity purchaser under that contract, for a purchase price of $1,800,000.

21.    Plaintiff is informed and believe that INAAM RASHEED NAEEM signed the Purchase Agreement for CHARLES STREET LLC, AND/OR ASSIGNS. This was the first time that Plaintiff learned that the buyer was related to the broker, SHAHID NAEEM.

22.    SHAHID NAEEM acted as a dual agent, representing both Plaintiff and the buyer. Confirmation of the agency relationship is set forth in paragraph 16 of the Purchase Agreement.  As Plaintiff agent, SHAHID NAEEM owed Plaintiff a fiduciary duty of utmost care, integrity, honesty and loyalty to Plaintiff.

23.    On or about April 13, 2017, SHAHID NAEEM prepared an Equity Sharing Addendum signed by Plaintiff on April 13, 201 7 and Defendant Shahid Naeem on April 14, 2017. A copy of the Equity Sharing Addendum is attached hereto as Exhibit "E" and incorporated herein by reference.

24.    The Equity Sharing Addendum stated the following:

> "2.4 Arkady Buzin and Svetlana Buzina Husband and
> Wife, to invest up to Four Hundred Thousand Dollars (up to
> $400,000.00) in the buying entity hereinafter referred to as
> 'The LLC".
>
> The LLC in its sole discretion, is to spend up to Two
> Hundred Thousand Dollar ($200,000.00) in order to improve
> and update and enhance the property and list it with Shahid
> Naeem for immediate sale. Any and all sale proceeds to be
> shared as follows:

~ 6 ~

**ADVERSARY COMPLAINT**

1) Any and all expenses including but not limited to repairs, updating loans and encumbrances, holding costs shall be paid out.

2) Original investment of the Seller to be paid next.

3) Any and all profits or losses shall be shared at 20% to the Seller and 80% to the LLC.

4) If the Buzin s investment is more or less than the above stated amount the net proceeds after the sale shall be prorated accordingly."

25.	On or about May 4, 2017, Plaintiff were presented with Amended Escrow Instructions, which provided that the Buyer, now identified as CHARLES STREET INVESTMENTS INC., a Wyoming Corporation, would obtain a new loan in the amount of$1,560,000.00 secured by a first deed of trust in favor of CARDENAS THREE, LLC.  Said Amended Escrow Instructions further provided that CHARLES STREET INVESTMENTS INC. would also obtain a second deed of trust in the amount of $100,000 in favor of Plaintiff, payable 60 days after the close of escrow if they moved out of the property, and a third deed of trust in the amount of $300,000.00 in favor of Plaintiff payable 36 months after the close of escrow.

26.	The Amended Escrow Instructions stated in part:

' The parties hereto acknowledge that Shahid Naeem, broker/real estate agent is related to Inaam Rashid Naeem of Charles treet Investments Inc., a Wyoming corporation, and is also receiving commission as an agent/broker."

Prior to said Amended Escrow Instructions, Plaintiff had no knowledge of the relationship between SHAHID NAEEM and INAAM RASHEED NAEEM of CHARLES STREET INVESTMENTS INC. or CHARLES STREET INVESTMENTS, LLC.

27.	With the pending Trustee Sale date of May 8, 2017, and believing that they had no other choice, Plaintiff signed the Amended Escrow Instructions and related documents so that the sale could close prior to the date set for the Trustee Sale.  Plaintiff is informed and believe that INAAM RASHEED NAEEM signed the Amended Escrow Instructions for CHARLES STREET INVESTMENTS INC.

/ / /

**ADVERSARY COMPLAINT**

28.     On or about May 4, 2017, Plaintiff also executed a Grant Deed in favor of CHARLES STREET INVESTMENTS INC. who was now the assignee of CHARLES STREET INVESTMENTS LLC. Said Grant Deed was recorded May 5, 2017, as Instrument No. 20170504869.

29.     Plaintiff is informed and believe and thereon allege that some time thereafter, CHARLES STREET INVESTMENTS INC. granted a first deed of trust in favor of Defendant CARDENAS THREE, LLC, which is the current beneficiary thereof in the amount of $1,560,000.00.

30.     On May 8, 2017, escrow closed for the purchase price of $1,800,000.00. After the payment of outstanding loans, a commission of $108,000.00. to SHAHID NAEEM, and other escrow costs, Defendants received ownership of Plaintiff' equity in the property in the amount of $400,000.00. A true and correct copy of the Escrow Closing Statement is attached hereto as Exhibit "C" and incorporated herein by reference.

31.     After the close of escrow, CHARLES STREET INVESTMENTS INC did not make any improvements or updates to the property in order to resell it. Defendant CHARLES STREET INVESTMENTS INC. has not paid any sums of money to Plaintiff in accordance with the terms of the Second Deed of Trust. As a result, Plaintiff have been unable to vacate the property.

32.     In July 2017, CHARLES STREET INVESTMENTS INC., through SHAHID NAEEM caused to be mailed a Notice of Breach of Agreement, as well as a document titled Notice to Perform Covenant (Cure) or Quit seeking the payment of $62,500.00. SHAHID NAEEM has also attempted to gain entry into the property for purposes of showing it to allegedly prospective purchasers.

33.     On August 3, 2017, Plaintiff notified Defendants of their belief that the Purchase Agreement and Addendum did not meet the requirements set forth in Civil Code, §1695, et. seq., offered to return the consideration received and sought a resolution of their claims.

34.     Having no response to the notice of recission, Plaintiff caused to be recorded a Notice of Rescission in the Los Angeles County Recorder's Office on August 19, 2017.

35.     CHARLES STREET INVESTMENTS, INC. further breached the Equity sharing agreement by their failure to pay off both deeds of trusts within one year of the sale date as required by the written contract.

///

~ 8 ~

**ADVERSARY COMPLAINT**

36.      CARDENAS THREE hired FRANKLIN ADVANTAGE INC to act as its underwriter when contemplating giving Charles Street, Investments Inc the loan that it made.  FRANKLIN ADVANTAGE was the agent of CARDENAS THREE.  Any negligence of the agent is conferred upon its Principal, namely CARDENAS THREE.

37.      Plaintiff is informed and believes that FRANKLIN ADVANTAGE performed underwriting services which included review of the Purchase Agreement, Equity Sharing Agreement.  FRANKLIN ADVANTAGE owed a duty to CARDENAS THREE to provide competent underwriting services and it fell below the standard of care for underwriting services when it approved the issuance of the loan to CHARLES STREET INVESTMENT, INC.  FRANKLIN ADVANTAGE's underwriting review would have and should have shown that on its face, the Purchase Agreement and Equity Sharing Agreement did not comply with existing California Law and should not have recommended funding to CARDENAS THREE.

38.      At the close of escrow, Plaintiff is informed and believes that CARDENAS THREE paid only $1,400,000.00. into escrow, yet received a note and deed of trust for $1,560,000.00.  Plaintiff is informed and believes that CARDENAS THREE received a $160,000.00 pre-payment of interest at the close of escrow.

39.      As of November 2020, CARDENAS THREE is seeking to foreclose on the property claiming that as of November of 2020, they are owed $2,050,000.00. based on its original loan of $1,560,000.00.  However, the balance of the loan plus interest at 8.5% per annum less $160,000 in interest that CARDENAS THREE received at closing of escrow, does not compute to owing $2,050,000.00.  Attached hereto as APPENDIX 1 the first year of interest was only $132,148.00 of which CARDENAS THREE had received prepayment of $160,000.00 leaving a credit of $28,527.00.

40.      Attached hereto as APPENDIX II is a true and correct copy of the calculation based on a three - year payment from June of 2017 when the loan began to December 2020 which is a total of $393,223.00 in interest.  Less the prepayment of $160,000.00 leaves a balance of interest payments due of $233,223. This amount of interest added to the loan of $1,560,000.00 leaves only $1,793,223, Not, $2,050,000.00 which is what CARDENAS THREE is not falsely claiming is the balance due to it per the Notice of Sale issued in December 2020.  The cost of foreclosure is not $256,767.00.

~ 9 ~

41.    This further adds to Plaintiff's belief that CARDENAS THREE had always intended to foreclose on the property by offering terms and conditions which would virtually guarantee a foreclosure the Plaintiff's would lose both their second and third lien.

## FIRST CLAIM FOR RELIEF

## DETERMINATION AND PRIORITY OF LIENS

(By Plaintiff SVETLANA BUZINA,

Against All Defendants, and Does 1-50)

42.    Plaintiff incorporates all of the allegations of fact contained throughout the Complaint as though fully set forth herein and hereby further alleges as follows.

43.    Plaintiff seeks a determination of the extent and validity of a lien on Real Property pursuant to B.R. 7001(2), which provides for an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property."

44.    CARDENAS THREE has a recorded lien against the Property in the amount of $1,560,000.00 for a loan which it purportedly gave to CHARLES STREET INVESTMENTS, INC.  The loan was at supposed to be at 8.5% interest.  CARDENAS THREE received prepayment of interest in the amount of $160,000.00 which they have not credited to CHARLES STREET INVESTMENTS, INC.

45.    Plaintiff is further informed and believes that CHARLES STREET paid interest on the loan in an additional amount of $74,000.00.

46.    As such there is a dispute by Plaintiff, CHARLES STREET INVESTMENTS, INC. and CARDENAS THREE as to the correct amount of the lien and the amount they plan to retain in foreclosure.

47.    Moreover, the Purchase Agreement included an Equity Sharing Addendum (the "ESA").  The ESA is subject to California Civil Code, §1695, et seq.  As set for more fully, the ESA was defective in that it failed to contain the required notice of right to cancel the Agreement.  The Plaintiff' right to cancel is tolled pending notice of their right to Cancel.

48.    Plaintiff has never received any notice of a right to cancel the Purchase Agreement.  Therefore, Plaintiff timely filed a Notice of Rescission of Grant Deed Recorded Pursuant to Home Equity Sales Contract under California Civil Code, §1695.14 on August 18, 2017.

**ADVERSARY COMPLAINT**

49. At best, this gives Cardenas Three an equitable claim to an interest in the Property equal to the benefit to which the Plaintiff received. In this case, the Plaintiff' First Mortgage held by Select Portfolio Servicing was paid $827,715.83; TD Foreclosure Services was purportedly paid $406,014.64 for the Plaintiff Second lien against the property. Additionally, $17,083.65 was paid for property taxes all for the Benefit of Plaintiff. This amount in totals only $1,250,814.12. That is the actual value of the equitable claim.

50. Plaintiff further allege based upon the fraud as alleged by way of this First Amended Complaint, the contract to which the Plaintiff's lost title to the Property are subject to recession. This provides a further basis for the determination of the extent and validity of the lien claim in California State Law is the Quiet Title Statute.

51. Plaintiff denies that CHARLES STREET INVESTMENT INC, nor CHARLES STREET LLC is the valid legal owner Property, nor do they have a right to put any lien against the property. Furthermore, Plaintiff denies that Cardenas III holds a valid lien in the amount claimed by them against the Property.

52. Plaintiff therefore seek from the court a determination of the validity and priority of the liens being asserted by CARDENAS THREE and of CHARLES STREET INVESTMENT INC or CHARLES STREET INVESTMENT LLC

**SECOND CLAIM FOR RELIEF**

**FOR QUIET TITLE BASED ON FRAUD**

(By Plaintiff SVETLANA BUZINA,

Against CHARLES STREET INVESTMENTS, INC., INAAM RASHED NAEEM)

53. Plaintiff incorporates all of the allegations of fact contained throughout the Complaint as though fully set forth herein and hereby further alleges as follows.

54. As of December 2016, Plaintiff were homeowners whose residence was in foreclosure.

55. On or about April 9, 2017, Plaintiff signed a home Purchase Agreement as prepared by their real estate broker, SHAHID NAEEM, with CHARLES STREET INVESTMENT, LLC, AND/OR ASSIGNS, who was the equity purchaser under that contract, for a purchase price of $1,800,000. Plaintiff is informed and believe that INAAM RASHEED NAEEM signed the Purchase Agreement for

~ 11 ~

**ADVERSARY COMPLAINT**

CHARLES STREET INVESTMENT, LLC, AND/OR ASSIGNS.

56.    On or about April 14, 2017, Plaintiff also signed an Equity Sharing Addendum to said Purchase Agreement as prepared by SHAHID NAEEM. Plaintiff is informed and believe that INAAM RASHEED NAEEM signed said Equity Sharing Addendum for CHARLES STREET INVESTMENT, LLC, AND/OR ASSIGNS.

57.    None of the contracts prepared by SHAHID NAEEM with CHARLES STREET INVESTMENT, LLC, AND/OR ASSIGNS, and/or INAAM RASHEED NAEEM, who are the Equity Purchasers, meets the requirements set forth in Civil Code § 1695, et seq., governing Home Equity Sales Contracts. The terms of the Purchase Agreement and Equity Sharing Addendum did not include various disclosure required for a home equity sales agreement, including but not limited to, a provision advising of the right of cancellation in accordance with Civil Code § 1695.4.  Further, the Purchase Agreement and Equity Sharing Addendum were not accompanied by a completed form captioned "Notice of Cancellation" in accordance with Civil Code §1695.4.

58.    Plaintiff is informed and believe that the buyer, CHARLES STREET INVESTMENT, LLC, AND/OR ASSIGNS, which was an entity, did not intend to use the Subject Property as a personal residence.  As part of the escrow, Plaintiff is informed and believe that CHARLES STREET INVESTMENT, LLC, an unknown entity, and/or CHARLES STREET INVESTMENTS INC. and/or INAAM RASHEED NAEEM obtained a loan in the amount of $1,560,000 secured by a First Deed of Trust on the Subject Property in favor CARDENAS THREE, LLC, as beneficiary.

59.    Because Defendants contracts do not comply with the terms set forth in Civil Code §1695, et seq., governing Home Equity Sales Contracts, Plaintiff is entitled to rescind the sale and are entitled to recover damages and attorneys' fees. CARDENAS THREE, LLC, is not and was not a bona fide encumbrancer for value, had notice of the violations of Civil Code §1695, et seq., and is charged with the unclean hands of the grantor, CHARLES STREET INVESTMENTS INC. and/or INAAM RASHEED NAEEM and therefore, Plaintiff is entitled to a declaration that its deed of trust is invalid and void.

60.    Plaintiff is seeking to quiet title against the claims of the Defendants as follows: Defendants are seeking to hold themselves out as fee simple owners and/or lien holder of the Subject Property, when in

fact Plaintiff have an interest in the property held by Defendants, Defendants have no right, title, interest, or estate in the Subject Property, and Plaintiff interest is adverse to Defendants' claims of ownership.

61.    Plaintiff is also seeking to quiet title as of May 4, 2017, the date in which they executed a Grant Deed in favor of CHARLES STREET INVESTMENTS INC. and/or the date that escrow closed resulting in the Defendants receiving ownership of Plaintiff' property.

62.    Plaintiff therefore seek a judicial declaration that title to the Subject Property is vested in Plaintiff alone and that CHARLES STREET INVESTMENT, LLC, CHARLES STREET INVESTMENTS INC., INAAM RASHEED NAEEM, SHAHID NAEEM and CARDENAS THREE, LLC, herein, and each of them, be declared to have no estate, right, title, or interest in the Subject Property and said Defendants, and each of them, be forever enjoined from asserting any estate, right, title, or interest in the Subject Property, adverse to Plaintiff herein.

### THIRD CLAIM FOR RELIEF

### FRAUD

(Against CHARLES STREET INVESTMENTS, INC. and INAAM RASHED NAEEM)

63.    Plaintiff incorporate the allegations contained in paragraphs 1 through 62 as though fully set forth herein.

64.    The Home Equity Sales Contract Act ("HE SCA") was enacted to protect homeowners who were faced with foreclosure proceedings and may find themselves at the mercy of unscrupulous individuals who "induce homeowners to sell their homes for a small fraction of their fair market values through the use of schemes which often involve oral and written misrepresentations, deceit, intimidation, and other unreasonable commercial practices." (Civil Code § 1695(a))

65.    HESCA is designed to protect homeowners in default against unfair purchases of their home equity. The Act regulates transactions between an equity purchaser and an equity seller. HESCA contains specific, detailed regulations concerning the content and form of contracts for the sale of a home in foreclosure. The contract must include the total consideration given, terms of payment and terms of any rental agreement; a conspicuous statement of the right to rescind the contract within five business days or until 8 a.m. on the day scheduled for foreclosure, with an attached notice of

~ 13 ~

ADVERSARY COMPLAINT

cancellation; and a conspicuous notice that until the right to cancel has ended, the equity purchaser cannot ask the seller to sign a deed or any other document. (Civil Code §§1695.3-1695.5.) The equity purchaser must provide, and complete, the contract in conformity with these terms. (Civil Code§ 1695.6(a))

66.     As of December 2016, Plaintiff were homeowners whose residence was in foreclosure. Plaintiff is informed and believe that from December 2016, and thereafter, CHARLES STREET INVESTMENT, LLC, CHARLES STREET INVESTMENTS INC., INAAM RASHEED NAEEM, and SHAHID NAEEM knew that the Subject Property was in foreclosure.

67.     Plaintiff is informed and believe that from December 2016, and thereafter, CHARLES STREET INVESTMENT, LLC, CHARLES STREET INVESTMENTS INC., INAAM RASHEED NAEEM, and SHAHID NAEEM did not disclose to Plaintiff that they had a statutory duty to provide to Plaintiff certain disclosures including a right of cancellation per Civil Code §§ 1695.3-1695.5.

68.     Plaintiff is informed and believe that in the absence of any right to cancel, they relied upon Defendants' knowledge, expertise, and good faith to protect Plaintiff' interests through the sale of the property. Plaintiff further are informed and believe that Defendants did not at any time inform them that they had a right of cancellation when entering into the Purchase Agreement and/or Equity Sharing Addendum, as well as during or after to the close of escrow.

69.     Plaintiff is informed and believe that CHARLES STREET INVESTMENT, LLC, CHARLES STREET INVESTMENTS INC., INAAM RASHEED NAEEM, and SHAHID NAEEM in derogation and intentional disregard of their statutory duty to provide Plaintiff with proper disclosures, including a notice of cancellation, proceeded by executing all documents necessary to sell, took unconscionable advantage of the Plaintiff and closed the sale on or about May 5, 2017.

70.     Plaintiff is informed and believe that the buyer, INAAM RASHEED NAEEM and/or CHARLES STREET INVESTMENTS INC. did not intend to use the property as a personal residence.

71.     With the pending Trustee Sale date of May 8, 2017, and believing that they had no other choice, Plaintiff agreed and signed the Amended Escrow Instructions and related documents so that the sale of the Subject Property to CHARLES STREET INVESTMENTS INC. and INAAM RASHEED NAEEM was completed and escrow closed on May 4, 2017.

72.    Plaintiff allege that in the absence of such disclosures, Plaintiff justifiably relied upon Defendants to complete the sales transaction.

73.    Plaintiff is informed and believe and thereon allege that CHARLES STREET INVESTMENTS INC. granted a first deed of trust in favor of Defendant CARDENAS THREE, LLC, which is the current beneficiary thereof in the amount of $1,560,000. Because Defendants contracts do not comply with the terms set forth in Civil Code §1695, et seq., governing Home Equity Sales Contracts, CARDENAS THREE, LLC, is not and was not a bona fide encumbrancer for value, had notice of the violations of Civil Code§ 1695, et seq., had a duty to investigate a suspicious transaction, and is charged with the unclean hands of the grantor, CHARLES STREET INVESTMENTS INC. and/or INAAM RASHEED NAEEM.

74.    On August 3, 2017, Plaintiff notified CHARLES STREET INVESTMENT, LLC, CHARLES STREET INVESTMENTS INC, INAAM RASHEED NAEEM, and SHAHID NAEEM that the Purchase Agreement and Addendum do not meet the requirements set forth in Civil Code §1695, et seq., offered to return any consideration received and sought a resolution of their claims. Having no response, Plaintiff also caused to be recorded a Notice of Rescission on August 19, 2017.

75.    CHARLES STREET INVESTMEN LLC, CHARLES STREET UNVESTMENTS INC., INAAM RASHEED NAEEM. and SHAHID NAEEM have failed and refused, and continue to fail and refuse, to agree to rescind the contract in that they refuse to execute a conveyance of the Subject Property as provided under the Civil Code.

76.    Plaintiff allege that based upon the wrongful acts perpetrated upon them by Defendants, and each of them, the Grant Deed in favor of CHARLES STREET INVESTMENTS INC. and the Deed of Trust in favor of CARDENAS THREE, LLC, must be rescinded.

77.    As a direct and proximate result of Defendants' conduct, Plaintiff have been damaged and injured both at equity and law, in that in addition to losing title to their home and/or equity in the amount of $2,000,000.00, and potential possession thereof, the conduct of CHARLES STREET INVESTMENT, LLC, CHARLES STREET INVESTMENTS INC., INAAM RASHEED NAEEM, SHAHID NAEEM as well as CARDENAS THREE have caused Plaintiff to incur or suffer costs and expenses that were paid through the escrow, including but not limited to escrow fees, commissions and other expenses in excess

~ 15 ~

ADVERSARY COMPLAINT

of $450,000.

78. CHARLES STREET INVESTMENT, LLC, CHARLES STREET 2 INVESTMENTS INC., INAAM RASHEED NAEEM, and SHAHID NAEEM knew or should have known they were violating Civil Code §1695, et seq., since SHAHID NAEEM is and in 2017 was a real estate broker. Defendants also knew that Plaintiff were in financial distress. During the course of this sales transaction, Defendants, by and through SHAHID NAEEM made multiple fraudulent representations to Plaintiff in order to get them to agree to the transaction, as well as require that the Plaintiff sign agreements without all appropriate disclosures as required under the Civil Code § 1695, et seq. In the role as dual agents, the aforementioned conduct of said Defendants of failing to disclose, investigate and advise the Plaintiff was fraudulent, willful and malicious and was intended to oppress and cause injury to Plaintiff in order to advance their own pecuniary interest in the sale and purchase of the Subject Property. The conduct of said Defendants was fraudulent, willful and malicious and was intended to oppress and cause injury to Plaintiff. Plaintiff is therefore, entitled to an award of punitive damages.

## FOURTH CLAIM FOR RELIEF

## FOR DAMAGES BASED ON VIOLATION OF HOME EQUITY

## SALES CONTRACT ACT California Civil Code 1695 et seq.

### (Against CHARLES STREET INVESTMENTS, INC., INAAM , and Does 1-50)

79. Plaintiff incorporate all of the allegations of fact contained throughout the Complaint as though fully set forth herein and hereby further alleges as follows.

80. As a result of said actions, Plaintiff have been damaged pursuant to Civil Code§§ 1695.6 and 1695.13 and are entitled to actual damages pursuant to Civil Code§1695.7.

81. At the time Defendants committed said acts; Defendants were guilty of malice, oppression, and a willful unconscious disregard of the rights of Plaintiff. By reason of these acts, Plaintiff have been oppressed, and seek punitive and exemplary damages pursuant to Civil Code §1695.7.

///

///

///

///

~ 16 ~

**ADVERSARY COMPLAINT**

## FIFTH CLAIM FOR RELIEF

## FOR BREACH OF WRITTEN CONTRACT

## (By Plaintiff Against CHARLES STREET INVESTMENTS INC., INAAM

## RASHEED NAEEM)

82.     Plaintiff incorporate all of the allegations of fact contained throughout the Complaint as though fully set forth herein and hereby further alleges as follows:

83.     Plaintiff allege that on or about April 9 and April 14, Plaintiff were fraudulently induced to enter into a Purchase Agreement and Addendum, which were and are written contracts, for the sale of the Subject Property, which was in foreclosure. The contract is in writing, and a copy is attached to the Complaint."

84.     This contract is subject to recession. However, if the court determines that the Contract cannot be rescinded, Plaintiff's further alleges that CHARLES STREET INVESTMENTS INC., breached the terms of the agreement as follows:

    a.  It was agreed that Escrow was to pay $100,000.00 directly to Larisa Oreschenko to pay back a debt owed to her by the Plaintiff. However, escrow never received the instruction due to the fraud committed by INAAM RASHEED NAEEM and CHARLES STREET INVESTMENTS INC. Plaintiff was told by the Escrow Representative Sally Lucero informed the Plaintiff that they were to pay the money, but after escrow closed and no payment was sent. There was never an agreement that he would arrange for a lien to be recorded against the property that would not be paid right away.

    b.  The Contract did not provide that INAAM RASHEED NAEEM and CHARLES STREET INVESTMENTS INC., was to receive any funds prior to the sale of the property. In escrow, he included an instruction whereby he took nearly $160,000 to be paid by CARDENAS III, the hard money lender. This was not authorized in the sale agreement.

    c.  Additionally, INAAM RASHEED NAEEM and CHARLES STREET INVESTMENTS INC. pre-paid interest on the CARDENAS THREE loan in the amount of $160,000 without any explanation. This was not authorized in the agreement.

ADVERSARY COMPLAINT

d. Additionally, INAAM RASHEED NAEEM and CHARLES STREET INVESTMENTS INC opened a Charles Street Investment, LLC and a Charles Street Investment Inc. for the purpose of confusing and deceiving the Plaintiff as to who would be the one that would hold a note in favor of the Plaintiff vs. the entity which actually received funds from the sale proceeds.

e. INAAM RASHEED NAEEM and CHARLES STREET INVESTMENTS INC had promised to begin exterior rehabilitation of the Property before the completing the sale of the Property, and find the Plaintiff a new place to live under a Lease-To-Own program he stated he was going to have the Plaintiff enter into. However, no such program materialized.

85.  At all times Plaintiff performed as agreed until such time as INAAM RASHEED NAEEM breached the purchase and partnership agreements. With respect to those things that they did not perform, they were excused from performing due to the material breaches by the Defendants.

86.  Moreover, Plaintiff allege that on or about April 9, 2017, and thereafter, INAAM RASHEED NAEEM and CHARLES STREET INVESTMENTS INC and SHAHID NAEEM did not inform Plaintiff that they had a statutory duty to provide Plaintiff with certain disclosures pertaining to the Purchase Agreement and Addendum, which constituted, and constitute the entire Contract, and failed to provide Plaintiff with an accompanying Notice of Cancellation. This failure to disclose was and is a breach of both contracts by INAAM RASHEED NAEEM and CHARLES STREET INVESTMENTS INC.

87.  Plaintiff allege that as a consequence of the numerous breaches of contract by INAAM RASHEED NAEEM and CHARLES STREET INVESTMENTS INC, Plaintiff have been damaged and injured both at equity and law, in that in addition to losing title to their home and/or equity in the amount of $2,000,000, and potential possession thereof, the conduct of CHARLES STREET INVESTMENT, LLC, CHARLES STREET INVESTMENTS INC., INAAM RASHEED NAEEM and SHAHID NAEEM have caused Plaintiff to incur or suffer costs and expenses that were paid through the escrow, including but not limited to escrow fees, commissions and other expenses in excess of $450,000.00.

///

# SIXTH CLAIM FOR RELIEF

## FOR NEGLIGENCE

### (By Plaintiff Against CARDENAS THREE and FRANKLIN ADVANTAGE, INC.)

88.    Plaintiff incorporate all of the allegations of fact contained throughout the Complaint as though fully set forth herein and hereby further alleges as follows:

89.    Franklin was hired by CARDENAS THREE to provide underwriting services on their behalf creating a principal/agent relationship. In this capacity, it owed a duty directly to CARDENAS THREE report in its underwriting as to the validity of the underlying purchase agreement, and recommend denial of the loan based on an illegal purchase agreement.

90.    In this case Plaintiff is informed and believe that Franklin received a copy of the Purchase Agreement which contained the Equity Sharing Addendum. As a matter of law, Equity Sharing Agreements are highly regulated. The fact that the Equity Sharing Addendum did not contain any language required by Civil Code, §1695, et seq. regarding rights of cancellation, it would have been up to the Underwriting to have given that information to CARDENAS THREE to make a determination as to whether to proceed with the transaction. The glaring omission of the Cancellation Language should have triggered Franklin's duty to investigate further into determining the validity of the transaction.

91.    Plaintiff is informed and believes that no investigation was conducted by Franklin. Had such an investigation been conducted, Plaintiff is informed and believes that it would have been contacted and informed of the discrepancy to verify a waiver of the cancellation which had not occurred. It could have prevented the execution of this contract.

92.    While the Plaintiff is not a party to the contract between CARDENAS THREE and Franklin, Plaintiff is entitled to damages for this breach of contract in as much as the Plaintiff were intended beneficiaries of the contract.

93.    Moreover, CARDENAS THREE is vicariously liable as the Principal for FRANKLIN as its agent.

/ / /

/ / /

/ / /

~ 19 ~

## SEVENTH CAUSE OF ACTION

## FOR DECLARATORY RELIEF

### (By Plaintiff Against All Defendants)

94.    Plaintiff incorporates all of the allegations of fact contained throughout the Complaint as though fully set forth herein and hereby further alleges as follows:

95.    An actual controversy has arisen and now exists between plaintiff and defendant concerning their respective rights and duties in that Plaintiff contend that they are the true legal and equitable owners of the subject property which should only be subject to a lien by Cardenas Three equal to the amounts paid by Cardenas Three which was paid for the benefit of the Plaintiffs.

96.    Whereas Defendants dispute these contentions and contends that they are the true owners of the property and that they did nothing wrong.

97.    Plaintiff desire a judicial determination of their rights and duties, and a declaration as to the ownership of the Property.

98.    A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain the rights and duties it has in as much as the Plaintiff have not been able to sell the property to satisfy the equitable claims and move on with their lives.  The Property is presently at risk for foreclosure by CARDENAS THREE.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray judgment against Defendants as follows:

99.    A judicial determination that Plaintiff is the owner in fee simple of the Subject Property and that no Defendant has any interest in the Subject Property adverse to Plaintiff.

100.    That this Court declares that the Grant Deed and Contracts described herein be rescinded;

101.    That Defendants be ordered to pay damages in an amount to be determined at the time of trial;

102.    For interest on said sum;

103.    For punitive or exemplary damages in an amount to be determined at the time of trial;

104.    For damages for violation of Home Equity Sales Contract Act;

105.    For attorney's fees pursuant to Civil Code § 1695.7;

106.    For costs of suit herein incurred; and

~ 20 ~

ADVERSARY COMPLAINT

107.   For such other relief as the Court may deem proper.

Dated:   February 23, 2021                    Respectfully submitted


_____
Nancy Korompis, Esq.
Attorney for Debtor/Plaintiff

~ 21 ~

**ADVERSARY COMPLAINT**

**VERIFICATION**

I, SVETLANA BUZINA am the Plaintiff in the above entitled Adversary Proceeding. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge except for the matters which are set forth in the Complaint on information and belief, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date:      February 23, 2021

_____

SVETLANA BUZINA

~22~

**ADVERSARY COMPLAINT**

# Exhibit "A"

**PURCHASE AGREEMENT**
One-to-Four Residential Units — Conventional and Carryback Financing

Prepared by: Agent _____ NA _____ | Phone _____ 310-775-7180
Broker _____ SHAHID NABEEM _____ | Email SNABEEM@ACCESSGROUPONLINE

**NOTE:** This form is used by a buyer's agent when preparing an offer for their buyer to purchase one-to-four unit residential property, the price to be financed using existing, new conventional or seller carryback financing.

DATE: ____ APRIL 3 ____ 20__ 17 __ at _____ 19297 CHARLES STREET, TARZANA _____, California.
*Items left blank or unchecked are not applicable*

FACTS:

1. Received from _____ CHARLES STREET LLC AND/OR ASSIGNS _____, as the buyer(s),
   1.1 the sum of $1,000.00 _____, evidenced by personal check, for deposit only on acceptance of this offer.
       payable to _____ ACCESS GROUP _____
   1.2 Deposit to be applied toward Buyer's obligations under this agreement to purchase property
   1.3 situated in the City of _____ TARZANA _____, County of _____ LOS ANGELES _____, California,
   1.4 referred to as _____ 19297 CHARLES STREET, TARZANA, CA 91356
   1.5 including personal property, see attached Personal Property Inventory. [See ft Form 256]
2. This agreement is comprised of this five page form and _____ pages of riders/attachments.

TERMS: Buyer to pay the purchase price as follows:

3. Cash payment through escrow, including deposits, in the amount of ........................................................ $ 1,000.00
   3.1 Other consideration to be paid through escrow ......................................... $ ____
4. Buyer to obtain a first, or second, trust deed loan in the amount of ........................................ $ 1,395,000.00
   payable approximately $100 _____ monthly for a period of _____ 150 _____ years.
   Interest on closing not to exceed _____ 10%, ARM type ____
   Loan points not to exceed _____
   4.1 Unless Buyer, within _____ 5 _____ days after acceptance, hands Seller satisfactory written confirmation Buyer has been pre-approved for the financing of the _____ purchase _____ price, Seller may terminate the agreement. [See ft Form 150]
5. Take title subject to, or Assume, an existing first trust deed note held by _____ with an unpaid principal balance of ........... $ ____
   payable $ _____ monthly, including interest not exceeding _____%,
   ARM, type _____, plus a monthly tax/insurance impound payment of $ ____
   5.1 At closing, loan balance differences (per beneficiary statement(s)) to be adjusted into cash, carryback note, or sales price.
   5.2 The impound account to be transferred charged, or without charge, to Buyer
6. Take title subject to, or Assume, an existing second trust deed note held by _____ with an unpaid principal balance of ........... $ ____
   payable $ _____ monthly, including interest not exceeding _____%,
   ARM, type _____, due _____, 20__
7. Assume an improvement bond lien with an unpaid principal balance of ........................................ $ 400,000.00
8. Note for the balance of the purchase price in the amount of ........................................ $ 400,000.00
   to be executed by Buyer in favor of Seller and secured by a trust deed on the property junior to any above referenced financing, payable $0.00 _____ monthly, or more, beginning one month after closing, including interest at _____ 0.00% per annum from closing, due _____ years after closing.
   8.1 This note and trust deed to contain provisions to be provided by Seller for due-on-sale, prepayment penalty, late charges, _____ NA _____
   8.2 Loan Purpose Statement is attached. [See ft Form 202-2]
   8.3 Financial Disclosure Statement is attached as an addendum. [See ft Form 300]
   8.4 Buyer to provide a Request for Notice of Default and Notice of Delinquency to senior encumbrances. [See ft Form 412]
   8.5 Buyer to hand Seller a completed credit application on acceptance. [See ft Form 302]
   8.6 Within _____ NA _____ days of receipt of Buyer's credit application, Seller may terminate the agreement based on a reasonable disapproval of Buyer's creditworthiness.
   8.7 Seller may terminate the agreement on failure of the agreed terms for junior financing. [See ft Form 151]
   8.8 As additional security, Buyer to execute a security agreement and file a UCC-1 financing statement on any property transferred by bill of sale. [See ft Form 436]
9. Total Purchase Price is ........................................................ $ 1,800,000.00

**10. ACCEPTANCE AND PERFORMANCE:**

10.1    This offer to be deemed revoked unless accepted in writing on presentation or within _____ days after date, and acceptance is personally delivered or faxed to Offeror or Offeror's Broker within this period.

10.2    After acceptance, Broker(s) are authorized to extend any performance date up to one month.

10.3    On the inability of Buyer to obtain or assume financing as agreed by the date scheduled for closing, Buyer may terminate the agreement.

10.4    Buyer's close of escrow is conditioned on Buyer's prior or concurrent closing on a sale of other property, commonly referred to as _____

10.5    Any termination of the agreement will be by written Notice of Cancellation timely delivered to the other party, the other party's Broker or escrow, with instructions to escrow to return all instruments and funds to the parties depositing them. [See ft Form 183]

10.6    Both parties reserve their rights to assign and agree to cooperate in effecting an Internal Revenue Code §1031 exchange prior to close of escrow on either party's written notice. [See ft Forms 171 or 172]

10.7    Before any party to this agreement files an action on a dispute arising out of this agreement which remains unresolved after 30 days of informal negotiations, the parties agree to enter into non-binding mediation administered by a neutral dispute resolution organization and undertake a good faith effort during mediation to settle the dispute.

10.8    If Buyer breaches the agreement, Buyer's monetary liability to Seller is limited to   $_____ or ☐ the deposit receipted in Section 1.

**11. PROPERTY CONDITIONS:**

11.1    Seller to furnish prior to closing:

a.    ☑ a structural pest control inspection report and certification of clearance of corrective conditions.

b.    ☑ a home inspection report prepared by an insured home inspector showing the land and improvements to be free of material defects.

c.    ☑ a one-year home warranty policy.
      Insuror _____    ☐ _____
      Coverage _____

d.    ☑ a certificate of occupancy, or other clearance or retrofitting, required by local ordinance for the transfer of possession or title.

e.    ☑ a certification by a licensed contractor stating the sewage disposal system is functioning properly, and if it contains a septic tank, is not in need of pumping.

f.    ☐ a certification by a licensed water testing lab stating the well supplying the property meets potable water standards.

g.    ☐ a certification by a licensed well drilling contractor stating the well supplying the property produces a minimum of _____ gallon(s) per minute.

h.    ☐ Energy Audit Report stating the rating for the property's improvements is no greater than _____

i.    _____

j.    _____

k.    _____

11.2    Seller's Condition of Property Disclosure – Transfer Disclosure Statement (TDS) [See ft Form 304]

a.    ☐ is attached, or

b.    ☑ is to be handed to Buyer on acceptance for Buyer's review. Within ten days after receipt, Buyer may either cancel the transaction based on a reasonable disapproval of the disclosure or deliver to Seller or Seller's Broker a written notice itemizing any material defects in the property disclosed by the statement and unknown to Buyer prior to acceptance. [See ft Form 269] Seller to repair, replace or correct noticed defects prior to closing.

c.    On Seller's failure to repair, replace or correct noticed defects under §11.2b or §11.4a, Buyer may tender the purchase price reduced by the cost to repair, replace or correct the noticed defects, or close escrow and pursue available remedies. [See ft Form 183]

11.3    Seller's Transfer Fee Disclosure Statement [See ft Form 304-2]

a.    ☐ is attached, or

b.    ☐ is to be handed to Buyer on acceptance for Buyer's review. Within ten days after receipt, Buyer may terminate this agreement based on a reasonable disapproval of the Transfer Fee Disclosure.

c.    Seller to pay any transfer fees arising out of the transaction.

11.4    Buyer to inspect the property twice.

    a.    An initial property inspection is required on acceptance to confirm the property's condition is substantially the same as observed by Buyer and represented by Seller or Seller's Agents prior to acceptance, and if not substantially the same, Buyer to promptly notify Seller in writing of undisclosed material defects discovered. [See ft Form 269] Seller to clean, replace or correct noticed defects prior to closing; and

    b.    A final walk-through inspection is required within five days before closing to confirm the correction of any noticed defects under §11.3c and §11.4a and maintenance under §11.14. [See ft Form 270]

11.5    Seller's Natural Hazard Disclosure Statement (NHD) [See ft Form 314] ☐ is attached, or ☐ is to be handed to Buyer on acceptance for Buyer's review. Within ten days of Buyer's post-acceptance receipt of the NHD, Buyer may terminate the agreement based on a reasonable disapproval of hazards disclosed by the statement and unknown to Buyer prior to acceptance. [See ft Form 182 and 185]

11.6    Buyer acknowledges receipt of a booklet and related Seller disclosures containing : *Environmental Hazards: A Guide for Homeowners, Buyers, Landlords and Tenants* (on all one-to-four units) [See ft Form 316-1], *Protect Your Family from Lead in Your Home* (on all pre-1978 one-to-four units) [See ft Form 313], and : *The Homeowner's Guide to Earthquake Safety* (on all pre-1960 one-to-four units). [See ft Form 315]

11.7    The property is located in, ☐ an industrial use area, ☐ a military ordnance area, ☐ a rent control area, ☐ airport, farmland, San Francisco Bay or mining operation area, see attached Notice Addendum [See ft Form 308] or ☐

11.8    On acceptance, Seller to hand Buyer the following property operating information:

    a.    ☑ Property Expense Report for Buyer's review within ten days of receipt; Buyer may terminate the agreement during the review period based on a reasonable disapproval of the information received. [See ft Form 306]

    b.    ☐ See attached Leasing and Operating Addendum for additional conditions. [See ft Form 275]

11.9    ☐ The property is located in a Homeowners' Association (HOA) community. The Homeowners' Association (HOA) Addendum [See ft Form 309]:

    a.    ☐ is attached, or

    b.    ☐ is to be handed to Buyer on acceptance for Buyer's review.

    c.    Within ten days of Buyer's post-acceptance receipt of the association documents, Buyer may terminate the agreement based on a reasonable disapproval of the documents. [See ft Form 183]

11.10    Seller's Neighborhood Security Disclosure [See ft Form 321]

    a.    ☐ is attached, or

    b.    ☐ is to be handed to Buyer on acceptance for Buyer's review. Within ten days after receipt, Buyer may terminate this agreement based on a reasonable disapproval of the Criminal Activity and Security Disclosure Statement.

11.11    Complying smoke detector(s) and water heater bracing exist, and if not, Seller to install.

11.12    If this property or an adjoining property contains a solar collector authorized by the Solar Shade Control Act (California Public Resources Code §25980 et seq.) and notice of its existence has been sent or received by Seller, then on acceptance, Seller to hand Buyer copies of the notices sent or received by Seller or provided to Seller by prior Owners of the property for Buyer's review. Buyer may, within ten days after receipt, terminate this agreement based on a reasonable disapproval of the conditions disclosed by the solar shade control notices.

11.13    Possession of the property and keys/access codes to be delivered: on close of escrow, or as stated in the attached Occupancy Agreement. [See ft Forms 271 and 272]

11.14    Seller to maintain the property in good condition until possession is delivered.

11.15    Fixtures and fittings attached to the property include, but are not limited to, window shades, blinds, light fixtures, plumbing fixtures, curtain rods, wall-to-wall carpeting, draperies, hardware, antennas, air coolers and conditioners, trees, shrubs, mailboxes and other similar items.

11.16    Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP code in which he or she resides.

12.    CLOSING CONDITIONS.

12.1    This transaction to be escrowed with _____ , ISLAT BUYERS CHOICE.
Parties to deliver instructions to escrow as soon as reasonably possible after acceptance.

    a.    ☑ Escrow holder is authorized and instructed to act on the provisions of this agreement as the mutual escrow instructions of the parties and to draft any additional instructions necessary to close this transaction. [See ft Form 401]

b.   Escrow instructions, prepared and signed by the parties, are attached to be handed to escrow on acceptance. [See ft Form 401]

12.2   Escrow to be handed all instruments needed to close escrow on or before __ MAY 7 __ 2017 __, or within __ 30 __ days after acceptance. [Failure to hand Escrow all documents required by the title insurer, lenders or other third parties to this transaction prior to seven days before the date scheduled for closing.

a.   Each party to pay its customary escrow charges. [See ft Forms 310 and 311]

12.3   Buyer's title to be subject to covenants, conditions, restrictions, reservations and easements of record.

12.4   Title to be vested in Buyer or Assignee free of encumbrances other than those set forth herein. Buyer's interest in title to be insured under a policy issued by ___ TBD AT BUYERS CHOICE ___ title company on a(n) 1 Homeowner(s) policy (one-to-four units), 1 Residential ALTA-R policy (vacant or improved residential parcel), 1 Owner's policy (other than one-to-four units), 1 CLTA Joint Protection policy (also naming Carryback Seller or purchase-assist lender), or 1 Binder (to insure resale or refinance within two years).

a.   Endorsements ___

b.   1 Seller, or 1 Buyer, to pay the title insurance premium.

12.5   Buyer to furnish a new fire insurance policy covering the property.

12.6   Taxes, assessments, insurance premiums, rents, interest and other expenses to be pro rated to close of escrow, unless otherwise provided.

12.7   Bill of Sale to be executed for any personal property being transferred.

12.8   If Seller is unable to convey marketable title as agreed, or if the improvements on the property are materially damaged prior to closing, Buyer may terminate the agreement. Seller to pay all reasonable escrow cancellation charges. [See ft Form 181]

## 13. NOTICE OF YOUR SUPPLEMENTAL PROPERTY TAX BILL:

California property tax law requires the Assessor to revalue real property at the time the ownership of the property changes. Because of this law, you may receive one or two supplemental tax bills, depending on when your loan closes.

The supplemental tax bills are not mailed to your lender. If you have arranged for your property tax payments to be paid through an impound account, the supplemental tax bills will not be paid by your lender. It is your responsibility to pay these supplemental bills directly to the Tax Collector.

If you have any questions concerning this matter, please call your local Tax Collector's Office.

## 14. NOTICE REGARDING GAS AND HAZARDOUS LIQUID PIPELINES:

This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.phmsa.dot.gov. To seek further information about possible transmission pipelines near the property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

## 15. BROKERAGE FEE:

15.1   Parties to pay the below mentioned Broker(s) a fee now due of 1 $ ___ or 1 ___ SIX % of the purchase price as follows:

a.   Seller to pay the brokerage fee on the change of ownership.

b.   The party wrongfully preventing this change of ownership to pay the brokerage fee.

15.2   Buyer's Broker and Seller's Broker, respectively, to share the brokerage fee ___ or 1, as specified in the attached Fee Sharing Agreement. [See ft Form 105]

15.3   Attached is the Agency Law Disclosure. [See ft Form 305]

15.4   Broker is authorized to report the sale, its price and terms for dissemination and use of participants in brokerage trade associations or listing services.

16. ___ BROKER IS REPRESENTING BOTH BUYER AND SELLER
BUYER IS RELATED TO THE BROKER

| Buyer's/ | | Seller's/ | |
|---|---|---|---|
| Selling Broker | SHAHID NAEEM | Listing Broker | SHAHID NAEEM |
| Broker's CalBRE #: | 01810268 | Broker's CalBRE #: | 01810268 |
| Buyer's Agent | NA | Seller's Agent | NA |
| Agent's CalBRE # | NA | Agent's CalBRE #: | NA |

Signature _____

Is the agent of:  ☐ Buyer exclusively.
 ☒ Both Seller and Buyer.

Address: _____ 4371 VANALDEN AVE

_____ TARZANA, CA 91356

Phone: __310-776-7180__ Cell: __310-498-3979__

Email: __SNAEEM@ACCESSGROUPONLINE.COM__

Signature: _____

Is the agent of:  ☐ Seller exclusively.
 ☒ Both Seller and Buyer.

Address _____ 4371 VANALDEN AVE

_____ TARZANA, CA 91356

Phone: __310-776-7180__ Cell: __310-498-3979__

Email ____ SNAEEM@ACCESSGROUPONLINE.COM

---

I agree to the terms stated above.
☐ See attached Signature Page Addendum [ft Form 251]

Date: _____ APRIL 9 _____ 20 17

Buyer: _____ CHARLES STREET LLC

Signature: _____

Buyer: _____ FOR: CHARLES STREET LLC

Signature: _____

I agree to the terms stated above.
☐ See attached Signature Page Addendum [ft Form 251]

Date: _____ 20

Seller: ARKADY BUZIN

Signature: _____

Seller: _____

Signature: _____

---

### REJECTION OF OFFER

Undersigned hereby rejects this offer in its entirety. No counteroffer will be forthcoming

Date: _____ 20 ____

Name: _____

Signature: _____

Name: _____

Signature: _____

FORM 150      12-14      ©2014 first tuesday, P.O. BOX 5707, RIVERSIDE, CA 92517  (951) 781-7300

**EQUITY SHARING ADDENDUM**

| | |
|---|---|
| Prepared by, Agent  NA | Phone  310-778-7180 |
| Broker  SHAHID NASEEM | Email  SNASEEM@ACCESSIXGROUP.S |

DATE  APRIL 13        20 17      at  19237 CHARLES STREET  TARZANA                    California.

Items left blank or unchecked are not applicable.

**FACTS:**

1. This is an addendum to the following agreement:

   ✓ Purchase agreement.

   Counteroffer.

   Exchange agreement.

   1.1   dated  APRIL 9            20 17

   1.2   entered into by  SELLER AND BUYER

   1.3   regarding real estate referred to as  19237 CHARLES STREET, TARZANA CA 91356

**AGREEMENT:**

2. In addition to the terms and conditions of the above-referenced agreement, the undersigned agree as follows:

   2.1   Purchase is contingent on Buyer locating an investor to form an equity-sharing partnership or limited liability company and fund the down payment.

         a.   Within ____13____ days of acceptance, Buyer to waive this contingency. Failure to do so entitles Seller to cancel the agreement.

   2.2   Buyer reserves the right to assign his purchase rights to a partnership or limited liability company to be formed prior to close of escrow.

   2.3   Vesting to be in the name of the partnership or limited liability company.

   2.4   ARKADY BUZIN AND SVETLANA BUZINA, HUSBAND AND WIFE, TO INVEST UP TO FOUR HUNDRED THOUSAND DOLLARS (UP TO $400,000.00) IN THE BUYING ENTITY HEREINAFTER REFERRED TO AS THE LLC.

         THE LLC, IN ITS SOLE DISCRETION, IS TO SPEND UP TO TWO HUNDRED THOUSAND DOLLARS ($200,000.00) IN ORDER TO IMPROVE AND UPDATE AND ENHANCE THE PROPERTY AND LIST IT WITH SHAHID NASEEM FOR IMMEDIATE SALE. ANY AND ALL SALE PROCEEDS TO BE SHARED AS FOLLOWS:

         1) ANY AND ALL EXPENSES INCLUDING BUT NOT LIMITED TO REPAIRS, UPDATING, LOANS AND ENCUMBRANCES, HOLDING COSTS SHALL BE PAID OUT, 2) ORIGINAL INVESTMENT OF THE SELLER TO BE PAID NEXT, 3) ANY AND ALL PROFITS OR LOSSES SHALL BE SHARED AT 20% TO THE SELLER AND 80% TO THE LLC, 4) IF THE BUZIN'S INVESTMENT IS MORE OR LESS THAN THE ABOVE STATED AMOUNT, THE NET PROCEEDS AFTER THE SALE SHALL BE PRORATED ACCORDINGLY.

Date: 6-10   20 17                          Date: _____  20 17

Buyer: _____              Seller: _____

Buyer: _____              Seller: _____

**Boulevard Escrow
Services, Inc.**

17337 Ventura Blvd, Suite 300
Encino, CA 91316

Phone: (818) 528-8711
Fax:

Sally Lucaro
Escrow Officer

Date: May 4, 2017
Escrow No.: 003018-SL

### AMENDED ESCROW INSTRUCTIONS

Property Address: 19237 Charles Street, Los Angeles (Area of Tarzana), CA 91356

THE ABOVE NUMBERED ESCROW IS HEREBY AMENDED AND/OR SUPPLEMENTED AS FOLLOWS:

**BUYER'S VESTING:** Charles Street Investments Inc., a Wyoming Corporation

Close of escrow is hereby amended to be May 8, 2017

The parties hereto acknowledge that Shahid Naeem, Broker/Real Estate Agent is related to Inaam Rasheed Naeem of Charles Street Investments inc. a Wyoming Corporation and is also receiving a commission as an agent/broker.

**THE TERMS ARE AMENDED AS FOLLOWS:** Let this be your authority to amend the original escrow instructions dated April 17, 2017 accordingly to reflect the new purchase price, new loan amount and the new balance of funds to be deposited into escrow.

Buyer will hand BOULEVARD ESCROW SERVICES, INC.

| | |
|---|---:|
| initial deposit in the amount of | 1,000.00 |
| Buyer herein to obtain a new first trust deed loan in the amount of $ | 1,560,000.00 |
| Buyer herein to execute a purchase money second trust deed loan in the amount of $100,000.00 | |
| Buyer herein to execute a purchase money third trust deed loan in the amount of $ | 300,000.00 |
| Total Consideration | **$1,800,000.00** |

**NEW LOAN:** Buyer will obtain a new loan in the amount of $1,560,000.00 secured by a first deed of trust in favor of Cardenas Three LLC payable at an interest rate of 8.5000% per annum for 1 years. Buyer agrees to comply with lenders loan requirements and to pay lender's loan fees. Buyer's signature on said documents shall be indication of their approval of all terms and conditions contained therein and Escrow Holder's authorization for the use of same.

**NEW LOAN:** Buyer will obtain a new loan in the amount of $100,000.00 secured by a second deed of trust in favor of Arkady Buzin and Svetlana Buzina, Husband and Wife as Joint Tenants payable at an no interest all due and payable in 60 days after the close of escrow. Buyer agrees to comply with lenders loan requirements and to pay lender's loan fees. Buyer's signature on said documents shall be indication of their approval of all terms and conditions contained therein and Escrow Holder's authorization for the use of same.

**NEW LOAN:** Buyer will obtain a new loan in the amount of $300,000.00 secured by a third deed of trust in favor of Arkady Buzin and Svetlana Buzina, Husband and Wife as Joint Tenants payable at no interest all due and payable in 36 months after the close of escrow. Buyer agrees to comply with lenders loan requirements and to pay lender's loan fees. Buyer's signature on said documents shall be indication of their approval of all terms and conditions contained therein and Escrow Holder's authorization for the use of same.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME.

SELLERS:

_____
Arkady Buzin

_____
Svetlana Buzina

BUYERS:

Charles Street Investments Inc., a Wyoming Corporation

By: _____
Inaam Rasheed Naeem

Exhibit "B"



**Boulevard Escrow Services, Inc.**

17337 Ventura Blvd, Suite 300
Encino, CA 91316

Phone: (818) 528-6711
Fax:

### SELLER'S FINAL SETTLEMENT STATEMENT

| | | | |
|---|---|---|---|
| PROPERTY: | 19237 Charles Street<br>Los Angeles (Area of Tarzana), CA<br>91356 | DATE: | May 8, 2017 |
| SELLER: | Arkady Buzin and Svetlana Buzina | CLOSING DATE:<br>ESCROW NO.: | May 5, 2017<br>003018-SL |

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 1,800,000.00 |
| New 2nd Trust Deed - Arkady Buzin and Svetlana Buzina, Husband and Wife as Joint Tenants | 100,000.00 | |
| New 3rd Trust Deed - Arkady Buzin and Svetlana Buzina, Husband and Wife as Joint Tenants | 300,000.00 | |
| | | |
| **PAYOFF CHARGES** - Select Portfolio Sevicing | | |
| [Total Payoff $827,715.83] | | |
| Principal Balance | 779,292.50 | |
| Interest on Principal Balance | 23,792.19 | |
| Recording Fee | 45.00 | |
| Late Charges | 666.28 | |
| Loan Level Advance Balance | 122.00 | |
| Incurred Legal Fees and Costs | 1.07 | |
| Escrow/Impound Advance Balance | 23,806.79 | |
| | | |
| **PAYOFF CHARGES -** | | |
| [Total Payoff $406,014.64] | | |
| Principal Balance | 350,000.00 | |
| Interest on Principal Balance | 46,395.07 | |
| Payment on Account | 2,092.00 | |
| Payment on Account | 221.00 | |
| Payment on Account | 1,154.00 | |
| Late Charges | 3,323.28 | |
| Legal Fees | 1,500.00 | |
| Additional Late Charges | 1,329.29 | |
| | | |
| **PRORATIONS/ADJUSTMENTS** | | |
| County Taxes at $7,760.75/semi-annually from 05/05/2017 to 07/01/2017 | | 2,414.45 |
| | | |
| **COMMISSION CHARGES** | | |
| Access Group | 108,000.00 | |
| | | |
| **OTHER DEBITS/CREDITS** | | |
| Disclosure Save NHD Natural Hazard Report Fee | 63.00 | |
| Department of Building and Safety $70.85 | 70.85 | |
| LA DWP Certificate Of Compliance Filing Fee | 15.00 | |
| First American Home Buyers Protection Home Warranty | 650.00 | |
| | | |
| **TITLE/TAXES/RECORDING CHARGES** - Property ID Title | | |
| Title - Owner's Title Insurance & JP | 3,376.00 | |
| Title - Messenger Fee | 69.41 | |
| Title - Sub Escrow Fee | 62.50 | |
| Title - Wire Fee | 25.00 | |
| Recording Grant Deed | 45.00 | |
| Miscellaneous Recording Fees | 7.00 | |
| Transfer Tax - County to Los Angeles County | 1,980.00 | |
| Transfer Tax - City to City of Los Angeles | 8,100.00 | |
| Property Taxes HOLD UNTIL CONFIRMED PAID to Los Angeles County Tax Collector | 17,083.65 | |
| Taxes 16/47036268 | 364.04 | |
| | | |
| **ESCROW CHARGES** - Boulevard Escrow Services, Inc. | | |
| Title - Escrow Fee | 3,800.00 | |
| Title - Wire Fee | 60.00 | |
| | | |
| Net Proceeds | 24,322.54 | |

*15221.51 pd 9/22/2017*



## Total Payments $1,692,148

Total Interest $132,148

## Mortgage Summary

| | |
|---|---|
| **Payments** | 11 monthly payments of $11,995.05<br>1 balloon payment of $1,560,202.04 |
| **Loan amount** | $1,560,000.00 |
| **Interest rate** | 8.5% |
| **Term** | 1 years |
| **Amortization period** | 30 years |
| **Balloon payment** | **$1,560,202.04** |
| **Total interest paid** | **$132,147.59** |

## Prepayment Results

Principal prepayments on your mortgage can save you a great deal of interest.
Below is a summary of your proposed prepayments for your balloon mortgage.

*Appendix 1*

## Prepayment Summary

| | |
|---|---:|
| Amount | 0 |
| Start with payment | |
| Total payments | |
| Total interest | |
| Interest savings | |
| Balloon payment | |

## Mortgage Term 30 years
Principal Balances by Year



## Payment Schedule

| Year | Total Payments | Principal Paid | Interest Paid | Ending Principal Balance |
|---:|---:|---:|---:|---:|
| | | | | $1,560,000.00 |
| 1 | $1,692,147.59 | $1,560,000.00 | $132,147.59 | $0.00 |

## Total Payments $1,953,223

Total Interest $393,223



## Mortgage Summary

| | |
|---|---|
| **Payments** | 35 monthly payments of $11,995.05<br>1 balloon payment of $1,533,396.68 |
| **Loan amount** | $1,560,000.00 |
| **Interest rate** | 8.5% |
| **Term** | 3 years |
| **Amortization period** | 30 years |
| **Balloon payment** | **$1,533,396.68** |
| **Total interest paid** | **$393,223.43** |

## Prepayment Results

Principal prepayments on your mortgage can save you a great deal of interest.
Below is a summary of your proposed prepayments for your balloon mortgage.

*Appendix 2*

## Prepayment Summary

| | |
|---|---|
| **Amount** | 0 |
| **Start with payment** | |
| **Total payments** | |
| **Total interest** | |
| **Interest savings** | |
| **Balloon payment** | |

## Mortgage Term 30 years
### Principal Balances by Year



## Payment Schedule

| Year | Total Payments | Principal Paid | Interest Paid | Ending Principal Balance |
|---|---|---|---|---|
| | | | | $1,560,000.00 |
| 1 | $143,940.60 | $11,793.01 | $132,147.59 | $1,548,206.99 |
| 2 | $143,940.60 | $12,835.41 | $131,105.19 | $1,535,371.58 |
| 3 | $1,665,342.23 | $1,535,371.58 | $129,970.65 | $0.00 |